*Law Library*

# IN THE SUPERIOR COURT OF GUAM

THE PEOPLE OF GUAM,

vs.

ANTHONY J. LIZAMA,

               Defendant.

CRIMINAL CASE NO. CF0158-05

DECISION AND ORDER

This matter came before the HONORABLE VERNON P. PEREZ on February 21, 2013 for the conclusion of Defendant's Motion to Suppress.[1] Attorney Michael F. Phillips appeared representing Defendant, who was present. Assistant Attorney General Gerald L. Henderson appeared on behalf of the Government. Having reviewed the pleadings, the record and the arguments presented, the Court now issues the following Decision and Order.

## BACKGROUND

Defendant Anthony Lizama (hereinafter "Defendant") is accused of Aggravated Murder and related crimes. Police investigated the 1996 murder of Young Hui Thompson (aka "Yumi") and later identified Defendant as a witness and eventually identified Defendant as a suspect. There is a conflict amongst the Parties as to the manner in which Defendant agreed to provide information to the Police. Defendant now argues that the Police illegally questioned him without effectively providing the Miranda warnings. *See* Motion to Suppress filed April 21, 2006. There is no question that some of the statements made by Defendant were made while he was not in police custody. *See* People's Opposition to Defendant's Motion to Suppress filed May 3, 2006. There is also no question that the Police failed to Mirandize Defendant before some of his statements were made. The issue to be decided by this Court now is whether

---

[1] There have been several continued hearings on Defendant's Motion to Suppress spanning over a number of years. Defendant, as well as the Government, has been represented by different counsel throughout the proceedings of this case. As the second judge to preside over these continued hearings, this Court will review in detail the record to ensure a thorough decision is made.

Defendant's Constitutional rights were violated by the Police at any point, and if so, to what extent? The Court must suppress any statement made in violation of the 4th or 5th Amendment.

Defendant argues that the Government failed to effectively provide him with the Miranda warnings and violated his right against self-incrimination. The Government opposes suppression by contending that the Defendant waived his rights at all relevant times before providing statements to the police or that those statements were provided while in police custody. The Court will describe and address each statement individually.

June 23, 1996 Statement

Defendant and others were interviewed at Buzzard's Lounge in Anigua around 2:36a.m.. Defendant provided a written statement at the time without being told his Miranda warnings and without being in police custody. The initial statement by Defendant did not implicate him, but did reveal that Defendant identified the clothing worn by the Victim at the time of her death. Exhibits B and C attached to Defendant's Motion to Suppress; *See* Transcript of Proceedings on March 20, 2009 at 25.

July 1, 1999- July 2, 1999 Statements

Defendant provided a second statement to the Police while incarcerated at DOC for an unrelated crime. Defendant initiated the contact with Police in order to provide information relating to the unsolved murder of the Victim. Before providing additional statements, Defendant was transported to the Tiyan GPD office and Defendant signed a custodial interrogation form.[2] Exh. D.[3] On July 1, 1999, Defendant again identified the clothing and effects worn by the Victim on the night of her death. *Id.* Defendant did not implicate himself at that time and explained to the Police that he witnessed another individual assault and murder the Victim.

---

[2] The signing of a custodial interrogation form does not in turn require the Court to conclude that Defendant was subject to custodial interrogation. The same is true that when someone is Mirandized, it does not automatically mean that they will be arrested.

[3] The Court would like to point out that both Parties refer to the same documents with different exhibit labels. If the Court refers to numerical exhibit, it refers to the Government exhibits and if the Court refers to an alphabetical exhibit, it refers to the Defendant's exhibits.

On July 2, 1999, Defendant agreed to do a video-taped reenactment and identify a potential suspect via photo lineup. Defendant identified Tu Thaht Pham as the person he saw assault the Victim and drew rough sketches of the scene. The murder investigation closed without an arrest made. On the July 2, 1999 reenactment video, Defendant acknowledged that he gave his statements voluntarily. *See* Exh. 7.

April 5, 2005 Statement

After re-opening the cold case in 2004, the Police contacted Defendant again on April 5, 2005 while he was detained at DOC for another unrelated crime. Defendant was not Mirandized for this third set of questioning and he repeated that he saw Tu Thaht Pham strangle the Victim and hit her head on the rocks at Adelup Beach Park.

April 21, 2005 Statement

Defendant again performed an identification via photo lineup and identified Tu Thaht Pham as the individual responsible for the death of the Victim. *See* Exh. 1 attached to People's Opposition; *See also* Defendant's Mot. at 4.

May 5, 2005 Statement

After interviewing other witnesses, Defendant was identified as a suspect and interviewed for a fourth time. Defendant was advised of his rights and he signed a custodial interrogation form. Defendant also consented to providing DNA samples. During the May 5, 2005 interview, Defendant was in custody for nearly eight hours. On the same day, Defendant performed a second video-taped reenactment and wrote two separate statements. Portions of those statements were incriminating. Exhs. 1, 3 and 4. Defendant was charged with the Victim's murder on May 6, 2005 at noon.

**DISCUSSION**

I. **Motion to Suppress**

The Constitution of the United States requires procedural protections for those suspected of criminal activity. *See Miranda v. Arizona*, 384 U.S. 436 (1966). The Government has a burden of proving a valid waiver of those protections by a preponderance of the evidence. *Colorado v. Connelly*, 479 U.S. 157, 168 (1986). The Court finds that state action is present

here as the Guam Police Department was directly involved in conducting the interviews with Defendant. *See U.S. v. Jacobsen*, 466 U.S. 109, (1984). A violation of *Miranda* would also violate Defendant's Constitutional rights if it occurred while Defendant underwent custodial interrogation. *Miranda* at 444.

### Custodial Interrogation

The requirement of the Miranda warnings applies once questioning occurs while in police custody. Defendant argues that he was in fact subject to custodial interrogation without being read his Miranda rights. The Government claims that Defendant waived his rights at the times he was subject to custodial interrogation.

Here, the Court agrees with the Government that Defendant was treated as a witness until May 5, 2005. It was not until after the communication with Jackery White, that the Police believed Defendant to be a suspect. *See* Testimony of Officer Flores on December 19, 2006 on page 76 of Transcript. Prior to May 5, 2005, all conversations with Defendant were treated as witness statements. Thus, the Court concludes that Defendant was not under arrest for the crime of murder and was free to end the questioning at any time. According to the record, Defendant volunteered the information on several occasions and at least some of his statements may come in. The issue for the Court now becomes whether there was ever a line of questioning posed to Defendant when he was not free to leave and where he did not waive his rights?

As to the June 23, 1996 statement, there was clearly no custodial interrogation as Police Officer Amaguin was doing routine witness identification and questioning. *See* Transcript of Proceedings on March 20, 2009 at 13-14. There was no need to provide Defendant with the Miranda warnings on that date as it applied to Defendant's written statement because he was clearly not in Police custody and only being treated as a potential witness.

As to the July 1-2, 1999 statements, Defendant was the one to initiate contact with the Police while he was incarcerated at DOC for an unrelated crime. Even if there was custodial interrogation, the Police informed Defendant of his Miranda rights and received a signed custodial interrogation form before questioning Defendant. Exh. 6; *See* Defendant's Mot. at 3. For any communication occurring before the reading of Defendant's rights, the Court will not

suppress the blurting out of statements unless those statements were invited in some way. Furthermore, at no point did Defendant ask for an attorney or desire to stop the two July 1999 interviews. While the burden is on the Government to prove waiver, the Government has provided evidence of written consent to the questioning. The Court does not find any illegal Police work as it applies to the July 1-2, 1999 statements because Defendant volunteered the information and because the Police did inform him of his rights. Exh. 6.

As to the April 2005 statements and photo lineup identifications, Defendant was again treated only as a witness and was free to stop providing information at any time. Therefore, there was no need to read Defendant of his rights or to acquire waiver of those rights. The Police action relevant to the April 2005 statements was also proper.

As to the May 5, 2005 statements, the Defendant was being questioned as a suspect and was questioned while in Police custody. Clearly, the Miranda warnings were required to be given to the Defendant before his statement could be used as evidence against him. In this instance, the Police did provide Defendant with those warnings and a written consent to custodial interrogation was acquired at 3:00p.m., before any other written statement was made. Exh. 2; see Testimony of Officer To on February 1, 2013. At the May 5, 2005 interview, Defendant was interrogated for almost eight hours and provided multiple incriminating statements. The Court concludes that the Government has shown adequate evidence of waiver and consent during the lengthy May 5, 2005 custodial interrogation. While there may be other potential reasons for suppression discussed below, the Court does not find a violation of *Miranda*.

### Accusation of Coercion

Defendant claims that the Police coerced him into making incriminating statements with lies and promises of leniency. All evidence reviewed by the Court via multiple Suppression Hearings suggest that the Police were quite forthright with Defendant. The Court is, however, concerned with the "carrot" as labeled by Defense Counsel of allowing Defendant to see his mother at her residence shortly after he provided an incriminating reenactment video. After watching the various video reenactments, the Court must say it is surprised with the cooperation

of Defendant both as a witness and as a suspect. The Court notes that such behavior is unusual but no evidence, other than mere suggestion, indicates that Defendant was made promises in return for his statements. From the record, it appears that Defendant openly conversed with the Police and Defendant's request to see his mother was granted as a courtesy. *See* Testimony on February 1, 2013.

Defendant asks this Court to look at the totality of the circumstances and to use reason to interpret the actions of the Police and Defendant. The Court recognizes that many of the facts of Defendant's cooperation with Police seem peculiar. Yet, peculiarity alone is inadequate to invalidate waivers of Constitutional rights or to require suppression of freely provided information. The Court would like to point out that it paid special attention to the fact that Defendant was the Party to initiate communications with the Police on July 1, 1999. The Court will not assume that such open communication is what occurred during the May 5, 2005 custodial interrogation, but such activity does highlight the history of unusual circumstances in this case.

Finally, the Court reviewed the multiple written statements provided by Defendant in combination with his videotaped reenactments and was able come to some additional conclusions. Defendant argued that his lack of knowledge of the specific drug in the second reenactment video tape revealed a potential discrepancy with Defendant's admissions. Yet, throughout the Cold Case "Homicide Supplement" and in Defendant's first written statement on May 5, 2005, Defendant specifically references "ice" when communicating with the Police. Exh. 3 and Exh. K. Defendant wrote "...Yumi owed me ($50) dollars for ice" and the Court does not believe that a reference to drugs would indicate a lack of knowledge when the same individual freely refers to "ice" as a street name for the narcotic. Exh. 3. While Defendant's argument that he lacks street knowledge is persuasive, it is not convincing when considering the entire record.

### Length of Interrogation

Defendant argues that the length of interrogation on May 5, 2005 itself was coercive. Defendant was held for eight hours undergoing questioning and was asked to provide multiple

written statements and a video reenactment of the assault on the Victim. While eight hours is indeed a long time, Defendant was provided food and bathroom breaks. Exh. K; *See* Testimony of Officer To on February 1, 2013. The Government provided, by a preponderance of the evidence, testimony and statements that suggest Defendant never asked to discontinue the interrogation and that the length and form of the interrogation were not the causes of Defendant's incriminating statements.

### Defendant's Mental Capacity is Not at Issue

Defendant argues that the Police should have considered Defendant's reduced mental capacity due to brain surgery when questioning him on several occasions. The Court asks: could Defendant's reduced mental capacity invalidate the waivers that he provided? The Supreme Court's ruling in *Moran v. Burbine*, 475 U.S. 412, (1986), reveals that a waiver must be proven to made with "full awareness both of the nature of the right to be abandoned and the consequences of the decision to abandon it." *Moran* at 421.

The Court is convinced that Defendant understood his rights and was not confused by the reading of his Miranda rights or the effect of the consent to custodial interrogation form. Defendant has been deemed fit to stand trial and to receive a sentence if found guilty. *See* Dr. Kiffer's Forensic Evaluation labeled as Exh. 2. While Defendant may have mental conditions and a lower intelligence quota, the Defendant appears to understand the judicial process and be able to be proceeded against. Defendant's waivers of his right to remain silent and right against self-incrimination are not invalidated by the fact that Defendant suffers from his specific set of mental conditions. The Court will not require Police to do pre-requisite mental health background checks before questioning a witness or suspect. While the arresting officers in this case testified that they would have behaved differently if they knew of Defendant's mental conditions, the Court has sufficient reason after looking at the totality of the circumstances to conclude that Defendant understood the effect of his waiving of rights. Finally, the written statements provided by Defendant, while slightly confused and conflicting, show awareness and comprehension. Thus, Defendant's lowered mental capacity does not affect his understanding and the waiving of his rights.

### Good Faith

Defendant makes several arguments that the Police acted in bad faith in the method of interrogation on May 5, 2005. The Government presented several Police Officer witnesses during the multiple Suppression Hearings who consistently testified that Defendant was not tricked, made promises in exchange for a confession or coerced in any way. The Government does have the burden of proof on issues of suppression and the Government has fulfilled its burden in this case.

In sum, the Court has sufficient support, by a preponderance of the evidence standard, to conclude that the Police lawfully performed their duties in all steps involving Defendant's interviews and interrogations. The Court also finds that the Police acted in good faith while interviewing Defendant and that his mental conditions do not invalidate the waiver he provided to the Police. The Court will not suppress any of the verbal, written and video recorded statements made by Defendant.

### CONCLUSION

For the foregoing reasons, the Court DENIES Defendant's Motion to Suppress. Parties are asked to prepare and submit a scheduling order to prepare for trial as early as possible.

So **ORDERED** this 29 day of March, 2013.

HONORABLE VERNON P. PEREZ
JUDGE, SUPERIOR COURT OF GUAM

I do hereby certify that this is a full true and correct copy of the original on file in the office of the clerk of the Superior Court of Guam. Dated at Hagåtña, Guam

APR 1 - 2013

Therese M. Blas
Deputy Clerk, Superior Court of Guam

*People v. Lizama,*
Decision and Order
Criminal Case No. CF0158-05                    - Page 8 of 8 -